**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**DISTRICT OF COLUMBIA**,

        Plaintiff,

    v.

**LAURA VINYARD AND WILLIAM VINYARD**,

        Defendants.

**Civil Action No. 12-01604 (CKK)**

---

**MEMORANDUM OPINION**
(November 2, 2012)

Plaintiff the District of Columbia ("the District") seeks judicial review of a Hearing Officer's Determination and Order ("HOD") rendered in favor of Defendants Laura Vinyard and William Vinyard ("Defendants"), parents and next friends of their minor son, G.V.,[1] following an administrative due process hearing under the Individuals with Disabilities Education Improvement Act ("IDEA"),[2] 20 U.S.C. § 1400 *et seq.*  *See* Compl., ECF No. [1].  The parties are presently before the Court on Defendants' [3] Motion for Preliminary Injunction seeking a "stay-put" order pursuant to 20 U.S.C. § 1415(j), requiring the District to maintain G.V.'s placement at the Lab School of Washington, a private special education school, and the District's [11] Motion to Stay the HOD pending the District's appeal to this Court.  Both motions are now

---

[1] The minor shall be referred to as G.V., pursuant to LCvR 5.4(f)(2).

[2] The IDEA was re-authorized and re-codified pursuant to the Individuals with Disabilities Education Improvement Act in 2004, Pub. L. No. 108–446, 118 Stat. 2647 (2004). The short title of the re-authorized and amended provisions remains the Individuals with Disabilities Education Act.  *See* Pub. L. No 108–446, § 101; 118 Stat. at 2647; 20 U.S.C. § 1400 (2006). Accordingly, the Court refers to the amended Act herein as the IDEA.

fully briefed[3] and ripe for adjudication.   After considering the parties' submissions and the applicable authorities, Defendants' [3] Motion for Preliminary Injunction shall be GRANTED, and the District's [11] Motion to Stay shall be GRANTED-IN-PART and DENIED-IN-PART. Specifically, the HOD shall be stayed pending a resolution by this Court of the District's appeal insofar as the HOD orders the District to reimburse Defendants for all costs associated with G.V.'s education at the Lab School of Washington for the 2011-2012 school year and to develop an individualized education program for G.V. for the current school year.   However, because the Court finds the Lab School of Washington to be G.V.'s current educational placement for stay-put purposes, the portion of the HOD directing the District to maintain and fund G.V.'s placement at the Lab School pending a judicial determination on the merits or agreement by the parties otherwise shall remain in effect.

## I. BACKGROUND

### A.  Statutory Framework

The IDEA was enacted to "ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  Once a child is identified as disabled, the school district within which the child resides must convene a meeting of a multi-disciplinary team to develop an individualized education program ("IEP") for the student.  *See* §

---

[3] *See* Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. for Prelim. Inj. ("Defs.' Mem."), ECF No. [3]; Pl.'s Opp'n to Defs.' Mot. for Prelim. Inj. ("Pl.'s Opp'n"), ECF No. [7]; Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. for Prelim. Inj. ("Defs.'  Reply"), ECF No. [8]; Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. to Stay June 30, 2012 HOD ("Pl.'s Mem"), ECF No. [11]; Defs.' Mem. in Opp. to Pl.'s Mot. to Stay ("Defs.' Opp'n"), ECF No. [12].  Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. to Stay ("Pl.'s Reply"), ECF No. [13]; Defs.' Response to Pl.'s Reply to Defs.' Opp'n to Pls.' Mot. to Stay ("Defs.' Response"), ECF No. [14].

1414.[4]  "The IEP is in brief a comprehensive statement of the educational needs of a

handicapped child and the specially designed instruction and related services to be employed to

meet those needs."  *Leonard v. McKenzie*, 869 F.2d 1558, 1560 n.1 (D.C. Cir. 1989) (citing *Sch.*

*Comm. of the Town of Burlington v. Dept. of Educ.*, 471 U.S. 359, 368 (1985)).  As such, it

represents the "*modus operandi*" of the IDEA.  *Id.*  The IEP must be formulated in accordance

with the terms of the IDEA and "should be reasonably calculated to enable the child to achieve

passing marks and advance from grade to grade."  *Bd. of Educ. of Hendrick Hudson Cent. Sch.*

*Dist. v. Rowley*, 458 U.S. 176, 204 (1982).  Once the IEP is developed, the school system must

provide an appropriate educational placement that comports with the IEP.  *Alston v. Dist. of*

*Columbia*, 439 F. Supp. 2d 86, 90 (D.D.C. 2006).  "If no suitable public school is available, the

school system must pay the costs of sending the child to an appropriate private school."  *Reid ex*

*rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005) (citation and internal editing

omitted).

The IDEA guarantees parents of disabled children the opportunity to participate in the

evaluation and educational placement process.  *See* § 1415(b)(1).  Parents who believe their

child's IEP or school placement is inadequate may request an administrative "due process

hearing" before an impartial hearing officer.  *See* § 1415(f).  Following such a hearing, "[a]ny

party aggrieved by the findings and decision … shall have the right to bring a civil action … in a

district court of the United States."  § 1415(i)(2)(A).  During the pendency of an appeal to a

district court, the IDEA provides that the child will "stay-put" – that is, remain in his "current

educational placement" until the matter is resolved.  20 U.S.C. § 1415(j).

---

[4] Unless otherwise indicated, all section references are to Title 20 of the United States Code.

**B.  Factual Background**[5]

As alleged in the District's complaint, G.V. is a seven year old student residing with his

parents, Defendants, in the District of Columbia, Compl. ¶¶ 4-6, who has been identified by the

District of Columbia Public Schools ("DCPS") as a student with a disability under the IDEA.  *Id.*

at ¶¶ 4, 7.  G.V. has always attended private schools at Defendants' expense[6] and by unilateral

parental placement.  *Id.* at ¶ 7.  He is currently enrolled as a first-grade student at the Lab School

of Washington ("Lab School"), located in the District of Columbia.  *Id.* at ¶ 6.  Prior to

beginning at the Lab School, G.V. attended Aiden Montessori School ("Aiden Montessori") for

the 2010-2011 school year.  *Id.*

On October 5, 2012, while G.V. was attending Aiden Montessori, DCPS convened an

IEP meeting, at which DCPS developed an IEP for G.V.  *Id.* at ¶ 8.  The IEP proposed six hours

per week of specialized general education instruction and certain related services including

speech/language therapy, occupational therapy, behavioral support, and physical therapy, all of

which DCPS offered to implement at one of two DCPS elementary schools once G.V. enrolled

and attended such school.  *Id.* at ¶¶ 8, 10, 11.   Defendants rejected the IEP offer and instead

---

[5] In their briefing on the instant motions, both parties assert broadly the same facts as alleged in
the District's complaint in setting forth the factual background, albeit with certain notable
disputes between them regarding the substance of the various exchanges between Defendants
and the District of Columbia Public Schools administration, *see, e.g.*, Defs.' Reply at 5-6 n.4.
Further, while the parties have filed the Administrative Record with the Court, they have
stipulated that reliance on the Administrative Record is not required to support their exclusively
legal arguments on the issue of the parties' requests for injunctive relief.  *See* Pl.'s Opp'n at 1
n.2.  Because the Court's resolution of the instant motions turns entirely on the parties' divergent
legal interpretations of the relevant statutes, regulations, and case law, and does not constitute a
determination on the merits as to the hearing officer's findings, the Court shall only briefly here
set forth the factual background leading up to the administrative due process proceedings, as
alleged in the District's complaint, as well as a summary of the HOD's findings, with direct
reference to the HOD for that limited purpose.
[6] The District alleges that at least a portion of G.V.'s tuition and related costs have been covered
by funds from G.V.'s trust fund and reimbursements from an insurance policy.  Compl. ¶¶ 16,
27.

maintained G.V.'s enrollment at Aiden Montessori. *Id.* at ¶¶ 11-14. In early 2011, G.V.'s parents applied, and G.V. was accepted for admission, to the Lab School for the 2011-2012 school year. *Id.* at ¶ 16. Defendants' legal representative subsequently sent DCPS a letter, requesting DCPS to pay for G.V. to attend the Lab School for the 2011-2012 school year, to which DCPS responded with an explanation as to why it would not do so. *Id.* at ¶¶ 17-18. Several months later, Defendants provided to DCPS a copy of a neuropsychological evaluation of G.V. that Defendants had independently procured. *Id.* at ¶ 17. After reviewing the evaluation, DCPS notified Defendants that if G.V. enrolled in and attended a DCPS school, G.V could receive the IEP previously proposed in October 2010, or, if the parents wished for G.V. to remain in private school, DCPS would instead provide G.V. with an Individualized Service Plan ("ISP").[7] *Id.* at ¶ 21, 25. Defendants again rejected DCPS's offers, and G.V. has remained in attendance at the Lab School as of the date this action was filed. *Id.* ¶¶ 6, 21-26.

On April 6, 2012, Defendants, on behalf of G.V., filed an administrative due process complaint, contending, *inter alia*, that DCPS had failed to provide G.V. with a FAPE for the 2011-2012 school year. *See* Defs.' Mem., Ex. 1 (HOD). Specifically, Defendants asserted that the IEP that was offered to G.V. in 2010 and re-offered to him for the 2011-2012 school year was not appropriate insofar as it provided only 6 hours per week of specialized education, whereas G.V. required a full-time program. *Id.* at 3. Defendants further asserted that despite the fact that they informed DCPS of their interest in continuing the IEP process in the hopes of developing an appropriate program, no IEP was developed due to DCPS's refusal to continue the

---

[7] Under the IDEA, children enrolled by their parents in private schools are not entitled to receive the same level of services as a public school student. The more limited services provided to parentally-placed children in private schools is referred to as "equitable participation" and is provided to children through the development of a "services plan." *See* §1412(a)(10)(A); 34 C.F.R. §§ 300.132, 300.137-139.

process because G.V. was not enrolled in a public school.  *Id*. at 3.  By way of relief, Defendants

requested reimbursement for the costs of placing G.V. at the Lab School during the 2011-2012

school year and prospective placement at the Lab School for the 2012-2013 school year.  *Id*. at

18 n.18.

Following a three-day hearing, the hearing officer issued a ruling on June 30, 2012.  In

brief, the hearing officer found that the District denied G.V. a FAPE, as, despite Defendants'

requests to convene an IEP meeting, it did not offer G.V. an IEP for the 2011-2012 school year,

and the IEP developed for G.V. on October 5, 2010 was not appropriate under the applicable

standards.  *Id*. at 16-20, 27.  Further, the hearing officer found that G.V.'s program and services

at the Lab School are beneficial and thus, the Lab School was an appropriate placement during

the 2011-2012 school year.  *Id.* at 17, 26, 27.  By way of relief, the hearing officer ordered DCPS

to reimburse Defendants for all costs associated with G.V.'s education at the Lab School for the

2011-2012 school year[8] and to convene a meeting with Defendants and others to develop an IEP

designed to address G.V.'s educational needs and an appropriate placement for implementation

of the IEP.  *Id*. at 28.  Further, the HOD orders as follows:

> [G.V.] is to continue attending the Lab School throughout this IEP and
> placement development process, and [the District] is to continue to fund this
> program and placement throughout the IEP and placement development
> process.  The Lab School is deemed [G.V.]'s current placement for stay-put
> purposes until either [Defendants] and [the District] agree otherwise or another
> hearing officer or court of appropriate jurisdiction decides otherwise.

*Id.*

As of the date of this Order, the District has not proposed a new IEP for G.V. and has

declined Defendants' requests for tuition reimbursement.  Defs.' Mem. at 8, 10.  On September

---

[8] As specified in the order, this includes "tuition, the costs for the provision of related services[,]
transportation and all other costs associated with [G.V]'s education at the Lab School."  HOD at
28.

26, 2011, the District filed its complaint with this Court, appealing the HOD.  Several weeks later, the parties filed their respective motions for injunctive relief.  While the District's appeal seeks reversal of several of the HOD's factual and legal findings, *see generally* Compl., the parties' requests for injunctive relief are considerably less involved.  Specifically, Defendants seek a "stay-put" injunction pursuant to §1415(j) ordering the District to maintain G.V.'s placement at the Lab School, retroactive to the beginning of the current, 2012-2013 school year and continuously thereafter until this Court's decision on the merits of the District's appeal of the HOD.[9]  *See* Defs.' Mot. for Prelim. Inj., ECF No. [3].  For its part, the District requests that the Court temporarily stay the entirety of the HOD pending the Court's decision on the District's appeal.  *See* Pl.'s Mot. to Stay, ECF No. [11].   Because the stay-put issue necessarily informs the analysis pertaining to the District's motion to stay, the Court addresses Defendants' preliminary injunction motion first.

## II.  DISCUSSION

## A.  DEFENDANTS' MOTION FOR A STAY-PUT INJUNCTION

### 1.  The IDEA's Stay-Put Provision Imposes an Automatic Statutory Injunction.

The IDEA provides that "during the pendency of any proceedings conducted pursuant to [Section 1415], unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child[.]" § 1415(j).  Commonly referred to as the "stay-put provision," this section requires the educational agency to maintain a disabled child in his "current educational placement" through both administrative and judicial proceedings, including an appeal from an administrative decision following a due

---

[9] Defendants' request for injunctive relief is limited to a request for funding of G.V.'s current placement at the Lab School, retroactive to the beginning of the 2012-2013 school year and pending resolution of the appeal.  Defendants do not, on the instant motion, request enforcement of the hearing officer's reimbursement award covering the 2011-2012 school year.

process hearing. 34 C.F.R. § 300.518(a).  The purpose of the stay-put injunction is to prevent educational authorities from unilaterally moving a child from his or her current placement. *Alston*, 439 F. Supp. 2d at 88 (citing *Honig v. Doe*, 484 U.S. 305, 306 (1988)).  A parent can invoke the stay-put provision to request injunctive relief when a school system proposes a "fundamental change in, or elimination of, a basic element of the [then-current educational placement]." *Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984). As courts have consistently held, maintenance of a child's current placement includes full payment for the program in which the student is placed, and a failure by the school district to fund a child's current educational placement constitutes grounds for stay-put injunctive relief. *See, e.g.*, *Petties v. Dist. of Columbia*, 881 F. Supp. 63, 66 (D.D.C. 1995) (holding that "fail[ure] to make payments in whole or in part or cutting off funds for special education programs amounts to a unilateral change in students' placements, which is prohibited by the IDEA").

Here, Defendants contend that the District, in contravention of the June 30, 2012 HOD, has refused to fund G.V.'s attendance at the Lab School pending its appeal of the HOD to this Court.  As a result, Defendants have moved for a preliminary injunction ordering the District to maintain, and fund, G.V.'s placement at the Lab School, retroactive to the beginning of the 2012-2013 school year and continuously thereafter until the resolution of the District's appeal.  Defs.' Mem. at 19.  The District argues in opposition that Defendants have failed to satisfy the four-prong test traditionally required to obtain injunctive relief, which would require Defendants to show that: there is a substantial likelihood of success on the merits; there is an imminent threat of irreparable harm should the relief be denied; more harm will result to Defendants from the denial of the injunction than will result to the District from its grant; and the public interest will not be disserved by the issuance of the stay-put order.  Pl.'s Opp'n at 10-11 (citing cases).  The

traditional four-part standard for injunctive relief, however, does not apply to requests for stay-put relief pursuant to the IDEA, which directs that the "child *shall* remain in [his] then-current educational placement." § 1415(j) (emphasis added).  The Supreme Court has recognized that the language of this pendency provision is "unequivocal" and "means what it says."  *Honig*, 484 U.S. at 323, 325.  Thus, "courts have consistently interpreted the stay put provision to be an automatic injunction."  *Laster v. Dist. of Columbia*, 439 F. Supp. 2d 93, 98-99 (D.D.C. 2006) (citing cases).  *See also Andersen by Andersen v. Dist. of Columbia*, 877 F.2d 1018, 1020 (D.C. Cir. 1989) (noting that if the stay-put provision applies, "injunctive relief is available without the traditional showing of irreparable harm"); *Johnson v. Dist. of Columbia*, 839 F. Supp. 2d 173 ("The stay put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy.") (citing *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist.*, 400 F.3d 508, 511 (7th Cir.2005)).

Accordingly, if Defendants are correct that the Lab School is G.V.'s "current educational placement," the District's refusal to fund G.V.'s placement at the Lab School amounts to a unilateral change to that placement, entitling Defendants to enforcement of their stay-put rights pursuant to § 1415(j), irrespective of their ability to demonstrate irreparable harm, likelihood of success on the merits, or a balancing of equities in their favor.  *Saleh v. Dist. of Columbia*, 660 F. Supp. 212, 214 (D.D.C. 1987).

**2.   The Lab School Is G.V.'s Current Educational Placement for Stay-Put Purposes.**

As the D.C. Circuit has observed, "the issuance of an injunction under this 'stay put' provision depends predominantly on the determination of what constitutes [the child's] 'current educational placement.'"  *Leonard*, 869 F.2d at 1563-64.  Accordingly, only if the Lab School is G.V.'s "current educational placement" is G.V. entitled to automatic stay-put relief.  *See id*. at

1564 n.5 ("Of course, the Supreme Court's statement that the language of [the IDEA's stay-put provision] is unequivocal is not apposite in a case … in which the placement appellants desire is not the child's 'current educational placement.'") (internal citations and quotations omitted).

Although the IDEA does not define "current educational placement," "courts have explained that a child's educational placement falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP." *Johnson*, 839 F. Supp. 2d at 176-77 (citing *Bd. of Educ. of Cmty High Sch. Dist. No. 218, Cook Cnty., Ill. v. Ill. State Bd. of Educ.*, 103 F.3d 545, 548 (7th Cir. 1996)) (internal quotations omitted). [10] "Typically, the dispositive factor in deciding a child's 'current educational placement' should be the IEP actually functioning when the 'stay put' is invoked." *Id.* at 177 (citations and internal marks omitted). Alternatively, as the statute provides, the state and parents may "otherwise agree" to another placement, which then becomes subject to the stay-put provision. *See* § 1415(j). In *School Committee of the Town of Burlington v. Department of Education of the Commonwealth of Massachusetts*, the Supreme Court found that an administrative decision in favor of a private school chosen by the parents "would seem to constitute an agreement by the State to the change

---

[10] Relying on *Johnson*, the District argues that G.V.'s stay-put placement cannot be the Lab School, because an educational placement cannot be a physical school. *See* Pl.'s Opp'n at 6. While the District is correct that an educational placement refers to the "general educational program – such as the classes, individualized attention and additional services a child will receive – rather than the 'bricks and mortar' of the specific school," *id.* (citing *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009)), its argument on this point misses the mark. In *Johnson*, the Court held that a student was not entitled to a "stay-put" injunction because no fundamental change in educational placement had occurred. 839 F. Supp. 2d at 178-80. Integral to the court's holding was the fact that the child's parents did not disagree with the IEP itself, but rather, were challenging the adequacy of the location where the child was to receive the services specified therein. By contrast, in the instant matter, the HOD's assessment of the Lab School was based on the educational program and services the Lab School provides to G.V., *see* HOD a**t** 14, 17. Further, as Defendants correctly observe, here, no party has argued that "some other school" should be considered G.V.'s educational placement; to the contrary, "[t]here is nothing else for the Court to even consider," as the District argues that G.V. neither had, nor was entitled to, an educational placement in the first place. Defs.' Reply at 7.

of placement," thereby making the private school the current placement.  471 U.S. 359, 372 (1985).  This holding is codified in federal regulations at 34 C.F.R. § 300.518(d), which states that "[i]f a hearing officer in a due process hearing … agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents."  *See Johnson*, 839 F. Supp. 2d at 177 ("[T]he HOD finding functions as an "agreement" for purposes of the stay-put provision between the parties[.]") (citing cases).  *See also Houston Indep. Sch. Dist. v. V.P. ex re.. Juan P.*, 582 F.3d 576, 591 (5th Cir. 2009); *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158 (2d Cir. 2004); *Clovis Unified Sch. Dist. v. California Office of Admin. Hearings*, 903 F.2d 635, 641 (9th Cir. 1990).

Here, the District argues that a plain reading of the federal regulations requires the hearing officer to "agree[] with the child's parents that a *change* of placement is appropriate" in order to warrant treatment of the HOD as an agreement as to a stay-put placement, 34 C.F.R. § 300.518(d) (emphasis added), and that here, no such agreement could exist because G.V. never had a functioning IEP and thus had no "placement" that could be changed.  *See* Pl.'s Opp'n at 9. However, several courts have found that, even where the child never had a functioning IEP, an administrative determination in favor of the parents constituted an implied agreement as to a placement for stay-put purposes, so long as the hearing officer made findings on the merits that the school system had failed to provide a FAPE and that the private program chosen by the parents was appropriate.  *See, e.g.*, *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83-87 (3d Cir. 1996); *Sudbury Public Sch. v. Mass. Dept. of Elementary and Secondary Educ.*, 762 F. Supp. 2d 254, 268 (D. Mass. 2010). *Cf. Snyderman v. Dist. of Columbia*, Civ. A. No. 06-923, 2007 WL 1114136, at *4 (D.D.C. April 13, 2007) (rejecting DCPS's argument that child did not have a

current educational placement because, *inter alia*, hearing officer's determination that private school chosen by parents was an appropriate placement established said private school as the current educational placement under the stay-put provision). *Compare L.M. v. Capistrano Unified Sch. Dist.*, 556 F. 3d 900, 903-04 (9th Cir. 2009) (finding that that there was no implied agreement as to "current educational placement" for stay-put purposes because the district court, in reviewing the administrative decision, ruled in favor of the parents on procedural grounds and never adjudicated the appropriateness of the private school placement).

In the case at hand, the hearing officer specifically found, after a review of the record and a three-day hearing, that "DCPS denied [G.V.] a FAPE[,]" as "[t]he IEP developed for [G.V.] on October 5, 2010 was not appropriate[,] … and [no] other IEP was developed." HOD at 27. *See also id.* at 16-20. The hearing officer likewise found that G.V.'s program and services at the Lab School are beneficial and that "[t]he Lab School was an appropriate placement in the 2011-2012 school year." *Id.* at 17, 26, 27. While the correctness of these findings is subject to review by this Court, such review shall be reserved for the merits of the underlying appeal. At this juncture, the hearing officer's unequivocal holding in favor of Defendants' placement of G.V. at the Lab School constitutes an agreement as to G.V.'s current educational placement for the limited purposes of stay-put relief. Accordingly, by operation of the June 30, 2012 HOD, G.V.'s educational placement became the Lab School, and the District's decision to decline to fund G.V.'s education at the Lab School during ongoing legal proceedings constitutes a unilateral change in placement that is prohibited by the stay-put provision. *See Snyderman*, 2007 WL 1114136 at *5.

**3.  The District Is Not Entitled to Equitable Relief on the Stay-Put Issue.**

The District broadly argues that stay-put relief is not warranted because it was ordered by the hearing officer, and the school system has appealed that decision.  It reasons that, "[i]f the [local educational agency] has the right to appeal an HOD, then compliance with HODs that it has appealed cannot be required."  Pl.'s Opp'n at 8-9.  However, as this Court has previously observed, while the IDEA contains a provision permitting the child to opt to "stay put" during the pendency of further proceedings, "[n]owhere in the IDEA … is there a corresponding right of an education provider to decline to implement a Hearing Officer Decision in a student's favor automatically, without seeking a stay of that Decision from either the Hearing Office or the Court in which further proceedings have been commenced[.]"  *Shelton v. Maya Angelou Public Charter Sch.*, 578 F. Supp. 2d 83, 102 (D.D.C. 2008).  Furthermore, courts have made patently clear that a stay-put determination must be made without consideration of the merits of the underlying dispute.  *See, e.g., Mackey v. Bd. of Educ.*, 386 F.3d 158, 160 (2d Cir. 2004).  This is because the stay-put provision "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their then current educational placement until the dispute with regard to their placement is ultimately resolved."  *Id.* at 160-61.  *See also Susquenita*, 96 F.3d at 86-87 ("While parents who reject a proposed IEP bear the initial expenses of a unilateral placement, the school district's financial responsibility should begin when there is an administrative or judicial decision vindicating the parents' position.  The purpose of the Act, which is to ensure that every child receive a [FAPE] is not advanced by requiring parents, who have succeeded in obtaining a ruling that a proposed IEP is inadequate, to front the funds for continued private education.").

Having established that the Lab School became G.V.'s current educational placement by operation of the June 30, 2012 HOD, it follows that G.V. is entitled to automatic stay-put

protection of such placement pending the District's appeal.  Automatic, of course, does not mean compulsory.  Rather, "the IDEA's stay put provision creates a presumption in favor of the child's current placement, but the school district may overcome the presumption if it can demonstrate that application of the traditional four part preliminary injunction test warrants a different result." *Laster*, 439 F. Supp. 2d at 99 n.6 (citing, *inter alia*, *Honig*, 484 U.S. at 327).  For the reasons set forth below, the Court finds that the District has failed to show that the balance of equities in this case requires a different result.

Regarding the District's likelihood of success on the merits, in its briefing, the District nowhere challenges the hearing officer's findings of fact; nor could it in light of the parties' joint representation to this Court that reliance on the Administrative Record would be unnecessary for purposes of the Court's resolution of Defendants' instant request for stay-put relief.  *See* Pl.'s Opp'n at 1, n.2.  Instead, the District's foremost objection to Defendants' stay-put motion, and to the HOD as a whole, is that, as a parentally-placed private school child, G.V. is simply not entitled to the development of an IEP unless and until he enrolls in public school.  *See* Pl.'s Opp'n at 11-15 (citing, *inter alia*, 34 C.F.R. § 300.137).[11]  While the Court declines to adopt a viewpoint one way or another on this issue at this early stage in the litigation, it likewise declines to find the District's argument so unassailable as to justify denying G.V. his presumptive stay-put right.  On a preliminary note, this is not a case of negligent or incomplete review at the administrative level, as the HOD specifically addresses and rejects the District's position as a violation of the IDEA.  *See* HOD at 20-23.  Further, although the District presents its position as

---

[11] 34 C.F.R. § 300.137 states, in relevant part, "No parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school." According to the District, when DCPS developed G.V.'s first proposed IEP in October 2010, its procedures were not yet in line with 34 C.F.R. § 300.137 and related provisions.  Pl.'s Opp'n at 2.

necessarily following from a straight read of the federal regulations, its interpretation has been rejected by several federal courts as being inconsistent with the IDEA's mandate that states make a FAPE "available to all children with disabilities residing in the state between the ages of 3 and 21[.]"  *See, e.g., James ex rel. James v. Upper Arlington Sch. Dist.*, 228 F.3d 764, 766-68 (6th Cir. 2000), *cert. denied*, 532 U.S. 995 (2001) (school district's refusal to prepare a requested IEP for a child still enrolled in private school constitutes a violation of the IDEA); *Moorestown Twp. Bd. of Educ. v. S.D.*, 811 F. Supp. 2d 1057, 1067-1077 (D.N.J. 2011) (concluding, upon an extensive analysis of the IDEA's statutory language, implementing regulations, legislative history, and informal agency guidance, that a school district may not condition the development of an IEP for a privately enrolled student whom the district knows is disabled and domiciled in the district, on a requirement that the student first enroll in public school).  While not squarely addressing the issue, several courts within the D.C. Circuit have signaled agreement with this interpretation by acknowledging the basic premise that "[t]he obligation to provide a FAPE … is triggered by a child's residency in the District – not the child's enrollment in a public school in the District."  *D.S. v. Dist. of Columbia*, 699 F. Supp. 2d 229, 235 (D.D.C. 2010).  *See also Dist. of Columbia v. West*, 699 F. Supp. 3d 273, 280 (D.D.C. 2010); *Hawkins v. Dist. of Columbia*, 539 F. Supp. 2d 108, 115 (D.D.C. 2008); *Dist. of Columbia v. Abramson*, 493 F. Supp. 3d 80, 85-86 (D.D.C. 2007).  Finally, the Supreme Court's holding in *Forest Grove School District v. T.A.*, although not directly on point, is instructive.  557 U.S. 230 (2009).  There, the Court affirmed an award of retroactive reimbursement for a parent's unilateral placement of a child in a private school where the state had failed to provide a FAPE, notwithstanding the fact that the child had not previously received special education services in the public school system and that the child's parents had not requested a FAPE until after removing the student from public school.

*Id.* Accord *N.S. v. Dist. of Columbia*, 709 F. Supp. 2d 57, 72 (D.D.C. 2010) ("[P]arents are not required to wait and see a proposed IEP in action before concluding that it is inadequate and choosing to enroll their child in an appropriate private school.") (citing *Forest Grove*, 557 U.S. 230 (2009)).  In light of the foregoing authorities, the Court finds that the District has failed, at this early point in the proceedings, to make a strong showing of its likelihood of success on the merits.

The District also argues that it would suffer irreparable harm if the Court grants Defendants' request for stay-put relief.  Specifically, the District asserts that its compliance with an order to maintain and fund G.V.'s placement at the Lab School pending its appeal of the HOD would moot the District's entire appeal.  But this is simply not the case.  As noted above, by definition, a court's stay-put ruling is limited to maintenance of a child's current placement pending proceedings; it does not constitute a determination on the merits as to the adequacy of that placement or even to the child's entitlement to services in the first instance. *See, e.g., Mackey*, 386 F.3d at 160 ("A claim for tuition reimbursement pursuant to the stay-put provision is evaluated independently from the evaluation of a claim for tuition reimbursement pursuant to the inadequacy of an IEP").  Accordingly, the District's compliance with a stay-put order bears no preclusive effect as to its appeal of the HOD's reimbursement award for G.V.'s tuition at the Lab School *prior* to the entry of the HOD, or of the HOD's findings regarding G.V.'s entitlement to a new IEP.

The District also argues that it may suffer irreparable harm in that, if it funds G.V.'s placement at the Lab School as of the beginning of the 2012-2013 school year and throughout this litigation, and if it later prevails on its appeal, it may nonetheless be unable to recover those payments made.  *See* Pl.'s Opp'n at 16 (citing *Jenkins v. Squillacote*, 935 F.2d 303, 307 n.3

(D.C. Cir. 1991) ("It would be absurd to imagine a trial court ordering parents to reimburse a school system for the costs of a hearing examiner's erroneous placement of their child, and any such order would clearly be an abuse of discretion.")).   However, as several courts have explained, "that is simply how the stay put provision of the IDEA operates." *Ravenswood City Sch. Dist v. J.S.*, Civ. A. No. 10-03950, 2010 WL 4807061, at *5 (N.D. Cal. Nov. 18, 2010) (citing *Capistrano*, 556 F.3d at 912 ("Where the agency or the court has ruled on the appropriateness of the educational placement in the parents' favor, the school district is responsible for appropriate private education costs regardless of the outcome of an appeal."). *See also Susquenita*, 96 F.3d at 85 ("The policies underlying the IDEA and its administrative process favor imposing financial responsibility upon the local school district as soon as there has been an administrative panel or judicial decision establishing pendent placement."). Accordingly, while this Court is not unsympathetic to the District's argument that payment of G.V.'s pendent placement at the Lab School constitutes "irreparable harm," such argument "is incompatible with the IDEA, which expressly affords such a remedy to the aggrieved student." *Ravenswood*, 2010 WL 4807061 at *5.

## B.  THE DISTRICT'S MOTION TO STAY HEARING OFFICER'S DETERMINATION

The Court shall now turn to the District's motion to stay the entirety of the HOD pending the instant appeal.  "A stay is not a matter of right, even if irreparable injury might otherwise result.  It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433-434 (2009) (citations and quotations omitted).  The Supreme Court has described the "traditional standard" for the issuance of a stay pending appeal as follows: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be

irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434. The Court of Appeals has emphasized that the traditional factors are "typically evaluated on a 'sliding scale.'…[I]f the movant makes a very strong showing of irreparable harm and there is no substantial harm to the non-movant, then a correspondingly lower standard can be applied for likelihood of success." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009) (citations and quotations omitted).

Here, it is readily apparent that the District's motion is, in part, an attempt to preclude G.V. from exercising his stay-put rights. However, as discussed *supra*, *Part II.A.1*, once a party has established that the placement for which a stay-put order is requested is in fact the child's "current placement" within the meaning of the IDEA, stay-put relief automatically follows unless the District can demonstrate its entitlement to an injunction ordering otherwise. As also discussed *supra*, *Part II.A.3*, the District has failed to demonstrate its entitlement to equitable relief on the stay-put issue. Accordingly, and in light of the substantial overlap between the factors governing stays and preliminary injunctions, *Nken*, 536 U.S. 418 at 434, the Court declines to stay the portion of the HOD finding the Lab School to be an appropriate educational placement, and the Lab School shall remain G.V.'s pendent placement for stay-put purposes. *See*, *e.g.*, *Ravenswood*, 2010 WL 4807061 at *4 (rejecting District's motion for a preliminary injunction to stay administrative decision as an improper attempt to preclude disabled child's ability to invoke his automatic stay-put rights).

The Court finds, however, that the circumstances of this case require a different result with respect to the hearing officer's remaining orders – namely, that the District reimburse Defendants for all costs associated with G.V.'s education at the Lab School for the 2011-2012

school year and develop a new IEP designed to address G.V.'s educational needs.  Indeed, the Court finds compelling the District's arguments that a stay of these holdings is necessary to preserve the District's meaningful right to appeal the HOD.  In its briefing on this matter, the District cites to two recent cases where DCPS appealed an HOD while having already complied with it by paying the tuition reimbursements ordered by the hearing officer.  *See* Pl.'s Opp'n at 9; Pl.'s Mem. at 5; Pl.'s Reply at 3 (citing 1:11-cv-01722-BAH, ECF No. [24]; 1:11-cv-1239-RBW, ECF No. [9]).  In one instance, the court dismissed the action as moot; in the other, a magistrate judge recommended a dismissal based on mootness.  As a practical matter, if the District were to provide G.V. with an adequate IEP, a court may be hard-pressed to find an actual, ongoing controversy regarding G.V.'s then-current placement.  *See American Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011) ("Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.").

As for the hearing officer's reimbursement orders, as has already been noted, *see supra*, *Part II.A.3*, several courts have held that the IDEA does not permit a school district to recover money already paid to parents in accordance with a hearing officer's determination.  *See Jenkins*, 935 F.2d 303 at 307 n.3.  Accordingly, should the District reimburse Defendants for G.V.'s tuition for the 2011-2012 school year and later prevail on appeal, they may nonetheless be irreparably harmed in their inability to recover such funds.  *See Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt*, 704 F. Supp. 2d 50, 52 (D.D.C. 2010) (In considering whether harm is irreparable in the context of economic harm, the movant must show either that the harm would threaten the existence of its business or that the moneys lost as a result of the

lack of a stay would be unrecoverable) (citing *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)).   While this outcome may be unavoidable, and in fact intended, with respect to payments made to maintain a child's pendent placement in light of the automatic rights conferred by §1415(j), *see supra*, *Part II.A.3*, nothing in the statute or regulations requires this Court to treat an administrative holding regarding reimbursement for a child's *past* tuition as an agreement between the parties warranting immediate relief.   What is more, if the District complies with the hearing officer's order to reimburse G.V. for the 2011-2012 school year, Defendants would have a reasonable argument that the case should be dismissed because, in the absence of an ability to recover such funds, there remains no justiciable controversy.

Both the District and the public have an interest in the clarity that an appeal of this matter may bring with regard to the District's IDEA obligations, as well as in the public funds at issue, and Defendants have indicated no reason why, if they do ultimately prevail, the District's later reimbursement would not suffice to put them in the position they would have been in if the District had not appealed the HOD.   Accordingly, the Court shall exercise its discretion and stay the hearing officer's orders that DCPS reimburse Defendants for all costs associated with G.V.'s education at the Lab School for the 2011-2012 school year and convene a meeting with Defendants and others to develop an IEP designed to address G.V.'s educational needs and an appropriate placement for implementation of the IEP.

## C.  Defendants Shall Not Be Required to Post a Bond.

The District requests that, in the event the Court grants Defendants' motion for a preliminary injunction, Defendants be required to post a bond equal to the amount that DCPS

would be required to pay, pursuant to Federal Rule of Civil Procedure 65(c).   On reply, Defendants argue that requiring the posting of a bond on a stay-put injunction would defeat the statutory scheme of the IDEA.   The Court agrees with Defendants, based on the same reason it declines to view the District's potential inability to recover stay-put payments – as opposed to past tuition reimbursement – to constitute irreparable harm: because "that is simply how the stay put provision of the IDEA operates." *See supra*, *Part II.A.3* (citing *Ravenswood*, 2010 WL 4807061 at *5).   If a local educational agency is required to maintain a stay-put placement irrespective of the outcome of the appeal, then what purpose would a bond serve?  Furthermore, as at least one other court in this circuit has held in connection with its issuance of an IDEA stay-put injunction, "only a party seeking to change (not maintain) the status quo needs to post a bond." *Laster*, 439 F. Supp. 2d at 99 n.7.   *See also Donna and Douglas S. v. Louisiana*, 26 IDELR 1108 (E.D. La. 1997), *aff'd, St. Tammany Parish Sch. Bd. v. Louisiana*, 142 F.3d 776 (5th Cir. 1998) ("[T]he requirement of a bond would be counterintuitive to the statute.  By virtue of the [administrative] decision, the state has agreed as a matter of law with the child's placement … To require a bond would place the parents at the same financial risk as those parents who inappropriately change their child's placement.").[12]

### III. CONCLUSION

For all of the foregoing reasons, Defendants' [3] Motion for Preliminary Injunction shall be GRANTED, and the District's [11] Motion to Stay shall be GRANTED-IN-PART and

---

[12] For their part, Defendants did not request that the Court require the District to post a bond in the event it granted the District's motion to stay, asserting that "given that a stay may not issue … the question of whether [the District] must post a bond is moot."  Defs.' Response at 4.  Accordingly, neither party shall be required to post a bond in connection with this Order.  *See Laster*, 439 F. Supp. 2d at 99 n.7 ("[A] judge could dispense with the bond requirement when no request for a bond was ever made in district court.") (citing *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003)).

DENIED-IN-PART.  The Lab School of Washington is G.V.'s pendent placement under the IDEA, and as such, G.V. is entitled to remain there pending the District's appeal in this matter, with such placement funded by the District, immediately, and retroactive to the beginning of the 2012-2013 school year. Accordingly, the portion of the HOD directing Defendants to maintain and fund G.V.'s placement at the Lab School pending a judicial determination on the merits shall remain in effect.  The HOD shall otherwise be stayed pending a resolution by this Court of the District's appeal.

Date:   November 2, 2012

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge