# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DISTRICT OF COLUMBIA,

  Plaintiff,

    v.

WILLIAM VINYARD, *et al.*,

  Defendants.

Civil Action No. 12-1604 (CKK)

# MEMORANDUM OPINION
(September 22, 2013)

The District of Columbia appeals from an administrative Hearing Officer's Decision in favor of Defendants William and Laura Vinyard, parents and next friends of their minor son G.V., which found the District denied G.V. a free appropriate public education in violation of the Individuals with Disabilities Education Improvement Act ("IDEA"),[1] 20 U.S.C. § 1400 *et seq*. Presently before the Court are the parties' cross-motions for summary judgment and the Plaintiff's motion for leave to file additional evidence. Upon consideration of the pleadings,[2] the relevant legal authorities, and the summary judgment record, the Court finds that the District satisfied its obligations under the IDEA by offering G.V. an IEP for the 2010-2011 school year. However, the District was required to create an IEP for G.V. for the 2011-2012 school year

---

[1] The IDEA was re-authorized and re-codified pursuant to the Individuals with Disabilities Education Improvement Act in 2004, Pub. L. No. 108-446, 118 Stat. 2647 (2004). The short title of the re-authorized and amended provisions remains the Individuals with Disabilities Education Act. *See* Pub. L. No 108-446, § 101; 118 Stat. at 2647; 20 U.S.C. § 1400 (2006). Accordingly, the Court refers to the amended Act herein as the IDEA.

[2] The Court's analysis focused on the following submissions, in chronological order of filing: Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. [20]; Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. [21]; Defs.' Opp'n, ECF No. [22]; Pl.'s Opp'n, ECF No. [23]; Pl.'s Errata, ECF No. [24]; Pl.'s Reply, ECF No. [25]; Defs.' Reply, ECF No. [26]; Jt. App'x, ECF No. [27]; Defs.' Mot. for Leave to File Add'l Evid., ECF No. [28]; Pl.'s Resp., ECF No. [29].

despite the fact the student was enrolled by his parents in a private school. Accordingly, for the reasons set forth below, the District of Columbia's [20] Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, the Defendants' [21] Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, and the Defendants' [28] Motion for Leave to File Additional Evidence is DENIED.[3]

## I. BACKGROUND

The facts relevant to the disposition of the parties' motions are undisputed, therefore, the Court cites to the parties' briefs to establish the factual background. G.V. is an eight year-old child living in the District of Columbia with his parents William and Laura Vinyard. Pl.'s Mot. at 2; A.R. 0051. G.V. has been diagnosed with Cognitive Disorder secondary to birth complications,[4] and meets the criteria for Borderline Intellectual Functioning. A.R. 0174. The Vinyards enrolled G.V. at the Aidan Montessori School when G.V. was a toddler. Pl.'s Mot. at 3; A.R. 0048-50. On August 5, 2010, the District of Columbia determined that G.V. was as student with a disability as defined by the IDEA, and identified G.V. as "as student with Other Health Impairment." A.R. 0179.

The District of Columbia subsequently convened an "IEP meeting" of a "multi-disciplinary team," which included the Defendants, an Evaluation Coordinator, a Physical

---

[3] The Defendants' motion for leave to file additional evidence asks the Court to consider a declaration attesting that a District of Columbia representative admitted in a different case that the District erred in failing to provide IEPs to parentally placed private school students otherwise eligible for IEPs. Defs.' Mot. at 2; Decl. of Kristy Kennedy, ECF No. [28-1]. As the District explained, the statements were purportedly made in the context of a discussion of a child that was placed in a private school by her parents when they believed the public school was no longer providing an free appropriate public education, and thus are inapposite to the present case. Pl.'s Opp'n at 4. Therefore, the Court denies the Defendants' motion.

[4] G.V. suffered a traumatic brain injury at birth which resulted in a subdural hemorrhage and a Grade III intraventricular hemorrhage with subsequent hydrocephalus, which has resulted in visual impairments and multiple developmental delays. A.R. 0275-0276.

Therapist, a Speech Pathologist, a Clinical Psychologist, an Occupational Therapist, and several other individuals participated. A.R. 0229. The final IEP, dated October 5, 2010, provided for six hours per week of specialized instruction in the general education setting, forty-five minutes per week of occupational therapy, and forty-five minutes per week of speech-language pathology, all within the general education setting. A.R. 0244. The IEP further provided for forty-five minutes per week of behavioral support services and sixty minutes of physical therapy outside the general education setting. *Id.*

The District subsequently sent a letter to the Defendants proposing to place G.V. at Bancroft or Lafayette Elementary Schools for the 2010-2011 school year. A.R. 0251. The Defendants rejected the IEP and the proposed placements. Pl.'s Mot. at 3; A.R. 0258, 0264. The Defendants continued G.V.'s enrollment at Aidan Montesssori School for the 2010-2011 school year. A.R. 0253. The District indicated that if the Vinyards maintained G.V.'s placement at the Aidan Montessori School, the District would provide forty-five minutes per week of speech and language therapy and twice per year occupational therapy consultation services to G.V. as a "non-attending student at his neighborhood school, which is Bancroft [Elementary School]." A.R. 0260. The District further indicated that if the Defendants decided to enroll G.V. at Bancroft or Lafayette, the multi-disciplinary team would review the IEP and "discuss the need to plan for any missed services." *Id.* In a letter dated December 1, 2010, the Defendants declined the offer of services from the District, indicating the parents had "decided to continue [G.V.] for the time being in his current regiment of services where he is obtaining significant educational benefit," and "would like to monitor his progress over the next two months in his current educational placement at Aidan Montessori . . . and will get back to [the District] at that time." A.R. 0261.

On March 27, 2011, the Defendants informed the District that G.V. had been accepted to the Lab School of Washington, a private special education school, for the 2011-2012 school year, and asked the District to consider the Lab School as a placement for G.V. A.R. 0278. The District indicated that it believed the IEP and proposed public school placements were "reasonably calculated to provide [G.V.] with meaningful educational benefit," and thus declined to fund a private placement. A.R. 0280. The District reiterated its offer to provide G.V. with a services plan comprised of one hour per week of speech and language therapy and twice-annual occupational therapy consultation services if he remained in private school. *Id.* G.V.'s parents rejected the District's offer. A.R. 0281.

During the summer of 2011, the Defendants submitted to the District a "Neuropsychological Evaluation" of G.V. performed in April 2011 in hopes the District would reconsider its refusal to fund G.V.'s placement at the Lab School. A.R. 0321. On August 5, 2011, the Defendants informed the District that they intended to enroll G.V. at the Lab School for the 2011-2012 school year. A.R. 0322. The District convened another meeting of the multi-disciplinary team on August 16, 2011. A.R. 0350. As a result of the meeting, the District proposed conducting observations of G.V. in his educational setting, to "complete updated Occupational Therapy and Physical Therapy evaluations," and to obtain "teacher-rating scales." A.R. 0356. The in-school observations were completed on September 20, 23, and 27, 2011. A.R. 0360-0365.

Once the evaluations were completed, the District of Columbia proposed that the parties hold a meeting to develop an "individualized service plan," or "ISP," for G.V. *See* A.R. 0391. The District explained that in light of G.V.'s placement in private school, he was only eligible for "equitable services through an Individualized Service Plan," but that if the Defendants were

to enroll G.V. in a public school in the District of Columbia, the District would create an IEP for the Plaintiff "within the first 30 days of his enrollment." A.R. 0391. The Defendants declined to conduct a meeting to create an ISP and did not enroll G.V. in a public school. A.R. 0392.

Nearly five months later, the Defendants filed an administrative Due Process Complaint, alleging the District denied G.V. a free appropriate public education by (1) failing to develop an appropriate IEP for the 2010-2011 and 2011-2012 school years; (2) failing to propose an appropriate placement; and (3) refusing to complete the IEP process, instead offering G.V. only an ISP. A.R. 0546-0553. The Hearing Officer found the IEP adopted for the 2010-2011 school year was inadequate insofar as it provided for only six hours of special instruction despite the fact the child was "struggling in all areas of cognition," and needed "on-going, almost omnipresent intervention." A.R. 660-61. The Hearing Officer also disagreed with the District's position that G.V. was not entitled to an IEP for the 2011-2012 school year unless and until the Defendants enrolled G.V. in a public school. A.R. 662-63. As a result, the Hearing Officer concluded that the District had "defaulted on its obligations under IDEA," and that the Lab School was an appropriate placement for G.V. for the 2011-2012 school year. A.R. 664-667. The District filed suit seeking review of the Hearing Officer's decision.

## II. LEGAL STANDARD

Under the IDEA, a "party aggrieved by the findings and decision" of the hearing officer may bring a civil action in federal court "without regard to the amount in controversy." 20 § 1415(i)(2)(A). The court "shall receive the records of the administrative proceedings," "shall hear additional evidence at the request of a party," and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C). In a civil action reviewing an IDEA administrative determination, "[a] motion

for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive." *D.R. ex rel. Robinson v. District of Columbia*, 637 F.Supp.2d 11, 16 (D.D.C. 2009).

The party challenging the Hearing Officer Determination bears the burden of proof and must "at least take on the burden of persuading the court that the hearing officer was wrong." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (citation omitted). "Factual findings from the administrative proceeding are to be considered prima facie correct, but the Court employs less deference than is conventional in administrative proceedings." *Savoy v. District of Columbia*, 844 F. Supp. 2d 23, 30 (D.D.C. 2012). To the extent the administrative decision was based solely on the Hearing Officer's legal interpretation of applicable law, the Hearing Officer's decision is entitled to no deference. *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 74 (D.D.C. 2012).

### III. DISCUSSION

As a condition of receiving federal educational funds, the IDEA requires the District of Columbia to ensure that "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21." 20 U.S.C. § 1412(a)(1)(A). A "child with a disability" is defined by statute as a child with intellectual disabilities, physical impairments, or serious emotional disturbance "who, by reason thereof, needs special education and related services." *Id.* § 1401(3)(A). The District is required to enact policies and procedures to ensure that "[a]ll children with disabilities residing in the State, including . . . children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated." *Id.* § 1412(a)(3)(A).

6

Children with disabilities enrolled in public schools, or who are placed in private schools by a local educational agency, are entitled to a free appropriate public education or "FAPE." The term "free appropriate public education" means special education and related services that: (a) "have been provided at public expense, under public supervision and direction, and without charge"; (b) "meet the standards of the State educational agency"; (c) include an appropriate preschool, elementary school, or secondary school education in the State involved"; and (d) "are provided in conformity with the individualized education program," otherwise known as an "IEP." 20 U.S.C. § 1401(9). An IEP, developed by a "multi-disciplinary team" or "IEP team," outlines the child's present academic level, the child's educational goals, and the educational and other services to be provided and in what environment they will be provided. 20 U.S.C. § 1414(d)(1)(A)-(B). "No parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school." 34 C.F.R. § 300.137(a). Students with disabilities that are placed by their parents in private school instead may be eligible for less comprehensive "services plan." *Id.* §§ 300.137(c), 300.138(b). The IDEA provides that each child with a disability shall be reevaluated "if the local educational agency determines that the educational or related services needs, including improved academic achievement and functional performance, of the child warrant a reevaluation," or at the request of the child's parent or teacher. 20 U.S.C. § 1414(a)(2)(A). Reevaluations should take place at least once every three years but not more frequently than once per year, unless the parent and local educational agency agree otherwise. Id. § 1414(a)(2)(B).

The crux of the District's motion for summary judgment is that pursuant to section 300.137, the District has no obligation to create an IEP for a parentally-placed private school

student like G.V. unless and until the child is enrolled in a public school in the District. The District further argues that even if it was obligated to create an IEP for the student, the Hearing Officer erred in finding that the IEP for the 2010-2011 school year was deficient, and erred as a matter of law in ordering the District to reimburse the Defendants for tuition paid for the 2011-2012 school year because the Defendants were reimbursed for the cost of tuition from a trust fund for G.V. resulting from medical malpractice litigation. The Defendants ask the Court to affirm the Hearing Officer's determination. The Court examines the parties' arguments in the context of two separate timeframes: (a) the 2010-2011 school year; and (b) the 2011-2012 school year.

    A.    *The District Fulfilled Its Obligations to G.V. under the IDEA for the 2010-2011 School Year.*

Prior to the start of the 2010-2011 school year, the District identified G.V. as a student with a disability for purposes of the IDEA and created an IEP for G.V., proposing to place G.V. at one of two public elementary schools. The Defendants declined the Districts offer of services, and maintained G.V.'s enrollment at Aidan Montessori school. Before the Hearing Officer, the Defendants argues the 2010-2011 IEP was inadequate, and the Hearing Officer agreed.[5] The District now argues that it was never obligated to create an IEP for G.V. for the 2010-2011 school year because G.V. was not enrolled in a public school.

Both parties point to a "Questions and Answers" document created by the Office of Special Education and Rehabilitative Services, a division of the Department of Education. Jt. App'x, ECF No. [27-3]. Question B-5 asks whether the local educational agency where a private school is located has an obligation to make an offer of a free appropriate public education to an

---

[5] The Defendants did not request reimbursement for the cost of G.V.'s tuition for Aidan Montessori for the 2010-2011 school year. *See* A.R. 642-70.

enrolled student. *Id.* at 6. The Office explains that

> The LEA where a child attends private school is responsible for ensuring equitable participation. If a parentally placed private school child also resides in that LEA, then the LEA would be responsible for making FAPE available to the child, *unless the parent makes clear his or her intent to keep the child enrolled in the private elementary or secondary school located in the LEA*. If a parentally placed private school child resides in a different LEA, the district in which the private elementary or secondary school is located is not responsible for making FAPE available to that child, but the LEA of the child's residence would be responsible for making FAPE available to that child.
>
> If a determination is made through the child find process by the LEA where the private school is located that a child needs special education and related services and a *parent makes clear his or her intent to keep the child enrolled in the private elementary or secondary school located in another LEA, the LEA where the child resides is not required to make FAPE available to the child*. However, if the parents choose to accept the offer of FAPE and enroll the child in a public school, then the LEA where the child resides is obligated to make FAPE available to the child.

*Id.* (emphasis added). Twice within this answer the Office makes clear that if the parents clearly express their intent to keep the child enrolled in the private school, the local education agency is not required to make a free appropriate public education available to the child. The Defendants suggest that the italicized language addresses "not merely a parents' intent to keep their child in a private school, but instead a parents' intention or decision to seek only equitable services, not FAPE." Defs.' Mot. at 12. Apart from the first sentence, nothing in the answer addresses equitable services. The relevant portions plainly state that a local educational agency (like the District of Columbia Public Schools) is responsible for providing a <u>FAPE</u> *unless the parent makes clear his or her intent to keep the child enrolled in private school.*

This is precisely what occurred here: the District proposed an IEP for G.V. for the 2010-2011 school year, but the Defendants indicated that

9

> While we appreciate the offer by DCPS for services for [G.V.] we have decided to continue him for the time being in his current regimen of services where he is obtaining significant educational benefit. As we contemplate [G.V.'s] educational programming for the future, we would like to monitor his progress over the next two months *in his current placement at Aidan Montessori.*

A.R. 0261 (12/1/10 Ltr.) (emphasis added); *see also* A.R. 264 (11/2/10 Ltr.) ("[S]ince we are now well into the academic school year, [the Defendants] will be keeping [G.V.] in his current educational program."). The District of Columbia even offered to convene another meeting to discuss any issues the Defendants had with the proposed IEP, but the District never received a response from the Defendants. A.R. 279 (3/25/11 Ltr.). The District offered G.V. a FAPE and the Defendants declined the offer, explicitly stating on two separate occasions that they intended to keep G.V. enrolled in private school. Notably, the Defendants did not suggest that the proposed IEP was inadequate to provide G.V. with a free appropriate public education nor did they file a due process complaint at that time, they simply declined the offer of services. At that point, consistent with the guidance from the Office of Special Education and Rehabilitative Services, the District was relieved of any obligation to provide G.V. with a free appropriate public education for the 2010-2011 school year.[6]

The Defendants cite *E.T. v. Board of Education of Pine Bush Central School District*, 2012 WL 5936537 (S.D.N.Y. Nov. 26, 2012), for the proposition that "the issue of parental intent vis-à-vis the child's enrollment is not dispositive of whether a school district has a FAPE obligation to a disabled child." *Id.* at *15. The *E.T.* court explained that

---

[6] The parties do not dispute that the "Questions and Answers" published by the Office of Special Education and Rehabilitative Services should inform the Court's decision, although they differ as to meaning of the agency's answers. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) ("[Courts] must give substantial deference to an agency's interpretation of its own regulations.").

10

> it is only after a court concludes that the school district failed to provide a FAPE and that the parents' chosen placement for the child was appropriate that it can determine, based upon equitable considerations, whether reimbursement for some or all of the cost of the child's private education is warranted. Upon consideration of any relevant equitable factors-such as the reasonableness of the parents' behavior, for example-a court may diminish or eliminate the right to tuition reimbursement.

*Id.* This argument is illogical: if a local educational agency has no obligation to provide a student with a FAPE, the court would never reach the question of whether the agency denied the student a FAPE, much less whether the parents are entitled to reimbursement for private school tuition. The Office of Special Education and Rehabilitative Services' interpretation of the relevant regulation is entirely consistent with the Supreme Court's framework for determining whether parents are entitled to reimbursement for private school tuition; the agency's guidance simply answers an antecedent question. Granting the agency's interpretation the substantial deference it is owed, the Court finds that District was relieved of any obligation to provide G.V. with a FAPE for the 2010-2011 school year at the point the Defendants declined the offer of services and clearly expressed their intent to keep G.V. enrolled in private school.

> B. *The District Failed to Comply with Its Obligations to G.V. under the IDEA for the 2011-2012 School Year.*

In the spring of 2011, the Defendants informed the District that G.V. had been accepted as a student at the Lab School, and asked the District to consider the Lab School as an appropriate placement for G.V. for the 2011-2012 school year. After G.V. underwent a neuropsychological evaluation, the multi-disciplinary team responsible for G.V.'s IEP reconvened, but the District indicated that if the Defendants wanted G.V. to receive an IEP, the Defendants would have to first enroll G.V. in a public school in the District.

The District argues that pursuant to 34 C.F.R. § 300.137(a) and 20 U.S.C. § 1412(a)(10), the District is under no obligation to create an IEP for G.V.---ever---until he enrolls in a public

11

school.[7] One cannot seriously argue that the plain text of section 300.137(a)---a regulation promulgated by the Department of Education---requires a child be enrolled in public school before the local educational agency is required to *create* an IEP when the Questions and Answers document published by an office of the Department of Education construes the regulation differently. Jt. App'x, ECF No. [27-3], at 6. The agency guidance contemplates that once a parentally placed private school child is identified as a student with disabilities under the IDEA, the local educational agency will offer the child a FAPE, i.e., an IEP, at which point the parents either (1) "accept the offer of FAPE and enroll the child in a public school," at which point the local educational agency "is obligated to make FAPE available to the child"; or (2) the parents "make clear [their] intent to keep the child enrolled in the private . . . school," and the local educational agency "is not required to make FAPE available to the child." *Id.* By the Department of Education's own interpretation of the governing regulations, the *receipt* of services pursuant to an IEP is predicated on a child enrolling in a public school, but an *offer* of an IEP is not.

The District argues that 20 U.S.C. § 1412(a)(10), which addresses "Children enrolled in private schools by their parents," does not require the District to provide a FAPE to parentally placed private school students. The Court agrees that the District is not required to *implement* an IEP for a student whose parents unilaterally maintain a student's enrollment at a private school when an IEP provides for a public placement. But nothing in this section authorizes the school district to ignore a parent's request that an IEP be developed for a child simply because the child

---

[7] The District also suggests it is not required to create an IEP until "parents consent to the public school system providing special education and related services." Pl.'s Opp'n at 18 (citing 20 U.S.C. § 1414(a)(1)(D)). The Defendants have represented, and the District does not dispute, that G.V.'s parents "have provided their ongoing consent as required by 20 U.S.C. § 1414(a)(1)(D)(i)(II)." Defs.' Opp'n at 11.

is presently enrolled in a private school. To the contrary, the statute provides that "*each* child with a disability" shall be reevaluated at the request of the child's parent. 20 U.S.C. § 1414(a)(2) (emphasis added). The multi-disciplinary team must review the data from any reevaluation and determine, among other things "whether the child continues to need special education and related services" and "whether any additions or modifications to the special education and related services are needed to enable the child to meet the measurable annual goals set out in the individualized education program." *Id.* § 1414(c)(1)(B). Nothing in this section limits the District's responsibilities to reevaluating only disabled students enrolled in public schools. If, after reevaluation G.V.'s parents once again decline services under the IEP and maintain his enrollment in a private school, the District is correct that pursuant to section 1412(a)(10) the District is not required to provide services to G.V. under the IEP. But section 1412(a)(10) merely governs the school district's obligations after the parents decline a FAPE offered by the school district, it is does not limit when the school district is required to propose a FAPE when requested by the parents.

The District further suggests that the statutory and regulatory provisions governing tuition reimbursement support the District's position. In relevant part, the statute provides that

> [i]f the parents of a child with a disability, *who previously received special education and related services* under the authority of a public agency, enroll the child in a private preschool, elementary school, or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner *prior to that enrollment* and that the private placement is appropriate.

20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added); *accord* 34 C.F.R. § 300.148(c). The District contends that this provision, by limiting tuition reimbursement to those students who were enrolled in a public school when FAPE became an issue, is "in harmony" with the District's

position that it is not required to offer a student a FAPE until the student enrolls in public school. Pl.'s Opp'n at 19-20. However, the Supreme Court has ruled that tuition reimbursement under the IDEA is *not* limited to students who previously received special education or related services through a public school. *Forest Grove School Dist. v. T.A.*, 557 U.S. 230, 247 (2009). Rather, the statute

> is best read as elaborating on the general rule that courts may order reimbursement when a school district fails to provide a FAPE by listing factors that may affect a reimbursement award in the common situation in which a school district has provided a child with some special-education services and the child's parents believe those services are inadequate.

*Id.* at 242. As interpreted by the Supreme Court, the provisions regarding tuition reimbursement offer little guidance as to a school district's obligations towards a parentally placed private school student who asks the school district to create an IEP.

The District of Columbia cites three cases as having "recognized" the proposition that the parentally-placed private school students operate under a "separate and different framework." Pl.'s Mot. at 7-8. And each of the cases cited stand for the proposition that if a parent rejects an IEP, unilaterally places the child in private school, and files a due process complaint, if the hearing officer (or court) finds the IEP was adequate, the local educational agency will not be found liable for failing to provide the child with a free appropriate public education. *D.P. ex rel. Maria P. v. Council Rock School Dist.*, 482 F. App'x 669, 673 (3rd Cir. 2012); *D.T. v. Seattle School Dist.*, No. C10-0759, 2011 WL 5282715, at *12 (W.D. Wash. Nov. 2, 2011);[8] *Bd. of*

---

[8] The District of Columbia's discussion of *D.T.* in both its motion and opposition to the Defendants' motion is misleading. The Seattle School District created an IEP for D.T. before he enrolled in public school, but the parents rejected the placement identified in the IEP and placed D.T. in a private school. 2011 WL 5282715 at *6. The parents sought reimbursement for the cost of D.T.'s tuition because, among other things, the placement identified in the proposed IEP was inappropriate. *Id.* The district court noted that factually it was difficult for the parents to show the proposed placement was inappropriate because D.T. never enrolled in the suggested

*Educ. of the Appoquinimink School Dist. v. Johnson*, 543 F. Supp. 2d 351, 357-58 (D. Del. 2008). However, none of the cases support the District's contention that if a parent asks the District to re-evaluate a child that is enrolled in a private school, the District has no obligation to create an IEP until the child leaves his or her current school and enrolls in public school.

Numerous courts have found that a local educational agency is required to (re)evaluate a child or revise an IEP at the parent's request even if the child is not presently enrolled in a public school in that locality. *D.S. v. District of Columbia*, 699 F. Supp. 2d 229, 235 (D.D.C. 2010); *Hawkins ex rel. D.C. v. District of Columbia*, 539 F. Supp. 2d 108 (D.D.C. 2008) ("[E]ven the possibility that [the child] may not have been registered in any school does not, by itself, eradicate [the District's] IDEA obligations since [the child] was previously identified for an eligibility determination."); *District of Columbia v. Abramson*, 493 F. Supp. 2d 80, 81-82, 85-86 (D.D.C. 2007) (finding District of Columbia was required to continue evaluation of child even after the parents enrolled the child in an out-of-state private school); *see District of Columbia v. West*, 699 F. Supp. 2d 273, 280 (D.D.C. 2010) (holding the due process claim arising out of District's failure to convene a multi-disciplinary team meeting was not "frivolous, unreasonable, or without foundation" even though the child was not enrolled in a public school at the time the parent requested a meeting). Noting that "[i]t is residency, rather than enrollment, that triggers a district's IDEA obligations," the Sixth Circuit has also held that school districts cannot require the student to re-enroll in a public school in order to receive an amended IEP. *Woods v. Northport Public School*, 487 F. App'x 968, 979-80 (6th Cir. 2012).

---

program. *Id.* at *9. The court did not address whether the school district was required to provide D.T. with an IEP prior to enrolling in the public school because the school district had in fact provided the student with an IEP despite the fact he had not enrolled in a public school.

15

> To hold otherwise would allow the school to slough off any response to its duty until the parents either performed the futile act of enrolling their son for one day and then withdrawing him as soon as the IEP was complete, or, worse, leaving the child in an arguably inadequate program for a year just to re-establish his legal rights.

*Id.*; *see also I.H. ex rel. D.S. v. Cumberland Valley School Dist.*, 842 F. Supp. 2d 762, 772 (M.D. Pa. 2012) ("[T]he school district of residence cannot be relieved of its responsibility to provide a requested IEP under the IDEA simply because the student has not enrolled in the school district.").

Faced with facts strikingly similar to this case, the court in *Moorestown Township Board of Education v. S.D.*, 811 F. Supp. 2d 1057 (D.N.J. 2011), reached the same conclusion. Dissatisfied with the proposed IEP for the student for the 2006-2007 school year, the child's parents unilaterally placed the child in a private school. *Id.* at 1062. During the fall of 2007, the parents asked the school district to convene a meeting to discuss an IEP for the child for the 2008-2009 school year. *Id.* The school district declined to reevaluate the child because he was not enrolled in a public school in the district. *Id.* Relying on, among other things, the same Office of Special Education and Rehabilitative Services guidance cited by both parties, the court rejected the school district's position, and found that by "fail[ing]e to respond to [the parents'] repeated requests for evaluations and an IEP, . . . Moorestown failed to offer M.D. a FAPE." *Id.* at 1077.

The District of Columbia attempts to distinguish many of these cases, including *Moorestown*, on two grounds: (1) the Defendants indicated they intended to keep G.V. enrolled in a private school; and (2) G.V. has never attended a public school. Neither argument is persuasive. The District is correct that after reviewing the proposed IEP for the 2010-2011 school year, the Defendants declined the offer of services and indicated they would keep G.V. in

private school for the 2010-2011 school year. There is nothing in the record to suggest that after asking the District to revise G.V.'s IEP for the 2011-2012 school year, the Defendants indicated they intended to enroll G.V. in private school no matter what. There was no opportunity for the Defendants to indicate that they would keep G.V. in private school for the 2011-2012 school year rather than the proposed placement because the District failed to offer a public placement for G.V. The District suggests that the Defendant's behavior after August 2011---namely filing a due process complaint and asking the hearing officer to find the Lab School is an appropriate placement---"remove[s] any possible ambiguity about the parents' intent to keep G.V. in the private school of their choice." Pl.'s Reply at 16-17. However, the relevant inquiry is whether the parents expressed their intent to maintain the child's private school enrollment *after* the school district offers a FAPE. Jt. App'x at 6. Here, the parents requested an IEP, the District refused, and the parents filed a due process complaint. The parents' subsequent conduct does not excuse the District's initial failure to comply with its obligation to offer G.V. a FAPE.

With respect to the second distinction, the District argues that "in this case never enrolled G.V. in the public school system, and, therefore DCPS was never obligated to provide a FAPE to G.V." Pl.'s Opp'n at 23. This argument is illogical. The only reason the District was not required to provide G.V. with a FAPE for the 2010-2011 school year was because his parents declined the offer of services, not because G.V. was never enrolled in a public school. Moreover, this argument is inconsistent with the principle set forth in *Forest Grove* that a child should not be denied the protection of the IDEA simply because the child has not previously received services under the statute. *See* 557 U.S. at 245. Ultimately the District offers no explanation as to why its past obligation to provide a student a FAPE (or lack thereof) is relevant to the question of whether the District is obligation to offer a student a FAPE when it is

17

requested by the parents.

The District of Columbia was obligated to offer G.V. a new IEP when his parents made the request before the 2011-2012 school year. The District admittedly failed to do so, and thus denied G.V. a free appropriate public education for the 2011-2012 school year.

### C. *The Hearing Officer Did Not Err in Ordering Tuition Reimbursement*

In light of the finding that the District denied G.V. a FAPE for the 2011-2012 school year, the Hearing Officer ordered the District to reimburse the Defendants for all costs associated with G.V.'s education at the Lab School for the 2011-2012 school year. A.R. 669. The Hearing Officer recognized that some of the costs were paid directly by G.V.'s medical malpractice trust fund. *Id.* n.23. The Hearing Officer indicated that the costs to be reimbursed "include costs paid directly by [Defendants] as well as any costs incurred by the trust fund." *Id.* In order to avoid double reimbursement, to the extent any of the parents' out of pocket expenditures had been reimbursed by the trust, the District was to reimburse the trust fund. *Id.*

The District argues that the Hearing Officer lacks statutory authority under 34 C.F.R. § 300.148 to order reimbursement of costs borne by G.V.'s medical trust fund. Pl.'s Mot. at 25. Tuition reimbursement for private school tuition when the school district denied a child a FAPE was first recognized by the Supreme Court as part of the courts' broad authority to "grant such relief as the court determines in appropriate." *School Committee of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985) (citing what is now 20 U.S.C. § 1415(i)(2)(C)(iii)). The subsequent enactment of 20 U.S.C. § 1412(a)(10)(C), the statutory basis for 34 C.F.R. § 300.148, did not limit the power of courts to grant reimbursement, but rather elucidated a "common situation" in which reimbursement would be appropriate. *Forest Grove*, 557 U.S. at 242. Thus, there is no basis for finding that the use of the term "parent" in

section 300.148 barred the Hearing Officer from requiring the District to reimburse G.V.'s medical trust.

In recognizing a right to tuition reimbursement, the Supreme Court did not focus on who made the initial expenditure, but that the placement was not provided at public expense:

> [W]here a court determines that a private placement desired by the parents was proper under the Act and that an IEP calling for placement in a public school was inappropriate, it seems clear beyond cavil that "appropriate" relief would include a prospective injunction directing the school officials to develop and implement at public expense an IEP placing the child in a private school.

*Burlington*, 471 U.S. at 369-70 (emphasis added). "An order awarding reimbursement of private-education costs when a school district fails to provide a FAPE merely requires the district to belatedly pay expenses that it should have paid all along." *Forest Grove*, 557 U.S. at 246 (citation omitted). The District offers no explanation as to why it should not be required to pay expenses the Hearing Officer found the District should have paid all along simply because G.V. has a medical trust fund.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the District of Columbia satisfied the requirements of the IDEA for the 2010-2011 school year by offering the student an IEP. The Defendants' decision to decline services---as opposed to challenging the IEP---relieved the District of its obligation to provide G.V. with a free appropriate public education for that school year. Therefore, the Court need not reach the parties' arguments regarding the appropriateness of the proposed IEP, and the District is entitled to summary judgment on Count I of the Complaint. However, once the Defendants sought reevaluation of G.V. and a new IEP for the following school year the District was required to create an IEP. The District would not be required to provide services under the IEP until the child enrolled at the school identified as the

19

placement in the IEP, but the District denied G.V. a free appropriate public education for the 2011-2012 school year by failing to even create an IEP.

Finally, the District failed to show that the Hearing Officer acted outside her authority by requiring the District to reimburse G.V.'s medical trust fund for expenditures associated with G.V.'s education for the 2011-2012 school year. Accordingly, the District of Columbia's [20] Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, the Defendants' [21] Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, and the Defendants' [28] Motion for Leave to File Additional Evidence is DENIED An appropriate Order accompanies this Memorandum Opinion.

　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　**COLLEEN KOLLAR-KOTELLY**
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE